Tilghman C. J.
This is an action of covenant on articles of agreement between plaintiff and defendant, in which the plaintiff declares, that the defendant covenanted to procure a patent for 400 acres of land described in the articles, and as *163 signs a breach in the'not procuring of the said patent. It' appears by the articles, that the plaintiff agreed to sell to the defendant 80 acres, part of 400 acres of land, which the plaintiff had purchased of John Milsser. The land was not patented, but the plaintiff had Musser's bond, conditioned for the obtaining of a patent on the payment of the whole purchase money. Part of the purchase money was due to Musser at the time of executing the articles between the plaintiff and defendant. The plaintiff covenanted with the defendant, “ to make, or cause the same to be done, a conveyance by “ patent for the said tract of land, at any time after the same “ can be done, at the reasonable request of the said Samuel “ Tate; and further, the said Michael Barndollar doth em- “ power the said Samuel Tate, to procure from John Mus-u ser a patent for the within mentioned land, agreeable to a “ title-bond entered into between John Musser and Michael “ Barndollar, dated 7th March, 1787, for which the said “ Michael Barndollar is to pay to the said Samuel Tate 31., “ and likewise to allow the said Samuel Tate for the balance “ due to John Musser, on his procuring the patent, to be “ taken out of the first payment after the patent is procured.” This covenant is not well drawn, but the meaning is plainly as follows: The plaintiff took upon himself to make Musser procure the patent; but the defendant was to go to Musser, and bring the patent from him to the plaintiff, for which service he was to receive 3l. If any part of the purchase money should remain due from the plaintiff to Musser, after the ob- ' taining- of the patent, the amount thereof was to be paid by the defendant to Musser, and the defendant was to deduct the same out of the first payment which should be due from him to the plaintiff thereafter, according to the articles of -agreement. On the trial of the cause the plaintiff offered to prove by parol evidence, that at the time of the execution of the articles, it was agreed between the plaintiff and defendant, that the defendant should lake upon himself to procure a patent for the whole 400 acres of land, and that he received from the plaintiff a valuable consideration for such assumption. The Court of Commom Pleas refused to receive this evidence; and, although evidence of an import somewhat •similar was afterwards given, (I suppose by consent,) the court directed the jury, that the evidence did not support the action. In both decisions I think the court was right. For *164 granting that a mistake in drawing articles of agreement may be shewn by parol evidence, the question was, whether súch evidence was relevant, on the issue joined? It is clear, that the agreement offered to be proved,, was different from the one set forth in the articles of agreement. But, the plaintiff’s action was founded on the articles of agreement, and must stand or fall with them. If, in fact, the parties made a different agreement by parol, that agreement might be the ground of a different action, but could not support an action foundéd on the articles. ,
I ám therefore of opinion,, that the judgment should be affirmed. ''
Ye ates jf.
The .plaintiff declared on articles of agreement, dated 13th October, 18.Q0, setting them out, and,lays the. breach in the defendant’s not procuring a patent. It appears, that John Musser .originally sold 400 acres of land, on Bloody Run, to .Barndollar, .and gave his bond, on the 7th of March, 1787, conditioned .to make him a complete title before the payment , of .the obligation to Musser, for 107/. 2s. 10</. and interest, which would fall due on the 1st March, 1794. The. purchase money and patenting fees wer.e thus agreed to be paid .out of the consideration, stipulated to be paid on the sale. . When Barndollar afterwards agreed to sell SO acres, part of the .large tract, to Tate, he covenanted “ to “ make,-procure, or cause the same to be done, a conveyance “ by patent with, special warranty at any time-after the same “can be’procured.” On this, point no difficulty whatever can arise. The defendant , offered to prove by Philip Fishbourne, who drew the articles, that at the. time they were signed, Tate and Barndollar agreed on Tate's taking it on himself to procure the patent, and that the 90/. mentioned in the articles was allowed to Tate, in order that he might take/ out the patent himself. As to Mr.. Fishbourtie, it w-as too gross to suppose for a moment, that Tate promised to obtain a patent for the lands sold, whether he received any consideration or not. There can be no doubt that the parol testimony offered, went immediately to establish a new contract, different from that declared upon in the most material point-. Could this testimony be legally received, is the only question. I admit, that what has passed between the contracting parties at,andimmediatelybefore the execution of the written contract *165 may be given in evidence to shew their true meaning, according to our ideas of the Law of Pennsylvania. ' But in no case that I know of, has the law been carried so far, that where the expressions in the contract are free from all doubt and ambiguity, and the party seeks his remedy under it, a new contract can be set up materially different from the written contract, whereupon he may charge his adversary. It would be contrary to all rule, and the first elements of justice ; and no man sued could be safe under any other system of judicial decision. lías a new contract been made ? Let the party ground his suit upon it, and recover according to the true state of facts as proved to the jury on the trial. But it has been urged here, that Tate agreed to take out the patent, was to get 3/.for so doing, and was to be allowed 90/. for procuring it. The 3/.' is' for mere travelling charges, and it is idle, to speak of that as an equivalent, when the further sum of 90/. was thought to be necessary for that purpose. No man can seriously think, that it was the meaning of the contracting parties, that the patent which Barndollar by express terms covenanted to procure, was to be procured for the pitiful sum of 31., but only, that if so procured, Tate should be allowed 90/. out of his purchase money for obtaining it. There is therefore, no covenant on the part of Tate, that he should procure the patent; and the honesty and equity of the whole case rests on this, Has Tate, after payment of his" 1100/., his full consideration money, received funds for payment of the several demands due on the patenting of the lands-? This does not appear; and on the whole matter, I am of opinion, that the judgment of the Court of Common Pleas should be affirmed. ■
Brackenridge J. expressed his concurrence in affirming' the judgment, but for different reasons. His opinion, however,- was not reduced to writing.
Judgment affirmed.